**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ROBERT BROWN,

                  Petitioner,

          v.                              No. 14-CV-938
                                                (LEK/CFH)

CHRISTOPHER MILLER,
Superintendent, Great Meadow
Correctional Facility,

                  Respondent.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**APPEARANCES:**                           **OF COUNSEL:**

Robert Brown
Petitioner Pro <u>Se</u>
09-B-0396
Shawangunk Correctional Facility
P.O. Box 2001
Wallkill, New York 12589

Hon. Eric T. Schneiderman           ALYSON J. GILL, ESQ.
Attorney General of the                Assistant Attorney General
   State of New York
120 Broadway                         LISA E. FLEISCHMANN, ESQ.
New York, New York 10271         Assistant Attorney General

### REPORT-RECOMMENDATION AND ORDER[1]

     Petitioner <u>pro</u> <u>se</u> Robert Brown ("Brown") is currently an inmate in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS") at

Shawangunk Correctional Facility ("Shawangunk").  On January 29, 2009, after a jury trial in

_____

      [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

the Onondaga County Court, Brown was convicted of sexual abuse in the first degree. Dkt. No. 1 ("Pet.") ¶¶ 1-2; People v. Brown, 946 N.Y.S.2d 761, 762 (N.Y. App. Div. 2012). Brown was sentenced to, and is currently serving, five years imprisonment, to be followed by five years of post-release supervision. Pet. ¶ 3. Brown now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) the grand jury and trial evidence was legally insufficient to prove first-degree sexual abuse; (2) his guilty verdict was inconsistent and against the weight of the evidence; (3) the prosecutor committed misconduct by calling petitioner names during trial and in her summation, implying, during her summation that he was a drug addict, shifting the burden of proof, and using evidence of uncharged crimes against him; (4) his trial attorney was ineffective for failing to object to the sufficiency of the evidence, the prosecutor's misconduct, photographs and testimony regarding his uncharged crimes, and the court's submission of the sexual abuse count to the jury; and failing to file a notice of appeal; (5)[2] the trial court erred by allowing a "highly prejudicial" hearsay statement and photos of an uncharged crime into evidence; (6) his sentence is harsh and severe; (7) the trial court lacked subject matter jurisdiction; (8) the indictment counts of rape in the first degree and sexual abuse in the first degree are duplicitous; (9) the indictment lacked specificity; (10) the trial court erred by instructing the jury that it could find him guilty of sexual abuse in the first degree instead of rape in the first degree; and (11) the trial court illegally amended the indictment to include the charge of sexual abuse in the first degree.

---

[2] Brown attached to his petition two additional pages stating seven additional grounds (listed here as (5)-(11)) on which he claims that he is being held in violation of the Constitution, laws, or treaties of the United States. Pet. at 16-17. Counsel for the respondent appears to have overlooked these pages, as none of the grounds in the attached pages are addressed in respondent's brief. See Dkt. No. 13 ("Resp't Mem. of Law"). Brown was allowed to attached the additional pages raising additional grounds as the form petition clearly states that a petitioner may "[a]ttach additional pages if [the petitioner has] more than four grounds[,]" the number of grounds allowed for within the form petition. The Court will consider all grounds raised by Brown.

Id. at 5-12, 16-17.  Respondent opposes Brown's petition.  See Resp't Mem. of Law.  Brown

filed a traverse in response to respondent's opposition.  Dkt. No. 23.  He also filed a letter in

support of the traverse.  Dkt. No. 24.  For the reasons that follow, it is recommended that the

petition be denied.

## I.  Background

### A.  The Trial

### 1.  The Prosecution's Case

During the evening and late night hours of June 16-17, 2008, A.C.,[3] Raul Pinet Jr.,

Steven Cathcart, and George Anthony congregated at Cathcart's apartment to drink alcohol

and smoke marijuana.  Dkt. No. 14-4 ("Tr. #2")[4] at 103, 154-55.  A.C. and Pinet resided at

the apartment, along with Cathcart.  Id. at 100, 222.  Kenneth Mason and Brown arrived at

Carthcart's apartment at approximately 2:30-3:00 a.m.  Id. at 105, 155; Dkt. No. 14-5 ("Tr.

#3") at 60.  After Mason and Brown arrived, Pinet, A.C.'s boyfriend, told A.C. to stay in her

bedroom for her own safety.  Tr. #2 at 106.

Anthony noticed that both Mason and Brown "had a little something to smoke" before

they arrived at the apartment, and both appeared "excited."  Tr. #2 at 157.  At some point

during the night, Pinet left the apartment to help his friend repair a house he had recently

purchased.  Id. at 224-25.  A.C., Mason, Anthony, and Brown smoked crack.  Id. at 171,

---

[3]  Witness A.C. is the victim in this case.  As such, the Court will refer to her by her initials only.

[4]  The page numbers following "Tr. #" refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

206; Tr. #3 at 61.[5]  Cathcart left the apartment sometime around 11:30 p.m. to collect cans outside.  Tr. #3 at 61.

A.C. offered Mason a sexual favor in exchange for crack, but Mason declined.  Tr. #2 at 206-07.  Brown and Mason smoked the crack Mason had brought, after which Mason observed that Brown "wasn't in his right state of mind."  Id. at 209.  Mason left the house after he and Brown smoked because he knew something was "wrong" and something bad was going to happen.  Id. at 212.  After Mason left, Brown knocked on the door to A.C.'s bedroom and demanded payment for the drugs A.C. had smoked.  Id. at 106-07.  Brown indicated that he wanted to have sex with A.C. and she declined.  Id. at 107.  Anthony heard Brown yell "bitch, you gonna do what I tell you, you gonna get me, you know, take care of me," and A.C. said "no, stop, no, I'm not doing nothing."  Id. at 159.  Brown then hit A.C.'s face with the back of his hand, causing her nose to gush blood.  Id. at 107.  A.C. ran out of the bathroom, passing Anthony on her way.  Id.  Anthony then left the apartment.  Id.  Brown followed A.C. into the bathroom, punched her in her cheek, and dragged her back to the bedroom.  Id. at 108-09.  There, Brown pulled off her shorts, tearing them, pinned her down with both knees on her side, and inserted his penis into her "vaginal area."  Id. at 109-110.  During the incident, Brown said to A.C. that his actions were payment for crack A.C. smoked earlier.  Id.  Mason returned to Cathcart's apartment while Brown and A.C. were in the bedroom, and, by opening the bedroom door slightly, observed that Brown was naked and A.C. appeared "timid."  Id. at 212-13.  Mason inquired about what Brown and A.C. were doing in the bedroom and Brown responded that "it's going to proceed, things are gonna

---

[5]  A.C. did not testify to smoking crack during the night in question.  She testified to smoking marijuana.  Tr. #2 at 103.

-4-

[sic] happen." <u>Id.</u> at 213-14.  Mason then left the apartment.  <u>Id.</u> at 215.

After Brown had sex with A.C., he carried her to the bathroom, removed the rest of her clothes, and washed her entire body.  Tr. #2 at 111-12.  At some point, Anthony returned to the apartment, heard A.C. crying from outside the apartment, and banged on the apartment's outer door.  <u>Id.</u> at 160-61.  Brown was naked when he answered the door.  <u>Id.</u> at 162.  Anthony told Brown that he was going to find the police.  <u>Id.</u>  Instead, Anthony left the apartment, and returned with a "Spanish kid that [he] knew."  <u>Id.</u>  Brown then let Anthony and his acquaintance into the apartment, where Anthony observed that A.C. was wet and had a towel over her face, and blood in Cathcart's bedroom and the spare bedroom.  <u>Id.</u> at 163.  Anthony also observed that A.C.'s face looked "like she got hit by a Mack truck."  <u>Id.</u>

Anthony and the Spanish man then left the apartment, collected three or four other men, and found Pinet.  Tr. #2 at 163-64.  The men returned to the apartment, where Pinet confronted Brown.  <u>Id.</u> at 226-27.  Pinet then saw that A.C.'s face was swollen and struck Brown.  <u>Id.</u> at 227.  The men then began to chase Brown, eventually catching up to and beating him outside of the apartment.  <u>Id.</u> at 229-30.  After the men left the apartment to chase Brown, Cathcart returned to the apartment to find A.C. alone, and bleeding.  Tr. #3 at 63-64.  A.C. told Cathcart that she needed to go to a hospital, and A.C. and Cathcart began traveling to the hospital on foot.  Tr. #2 at 113.  A.C. felt "extreme pain" in her face, head, and vaginal area.  <u>Id.</u>

Meanwhile, Officer Christopher Dominick was patrolling the southwest side of the city of Syracuse when an ambulance driver approached his patrol car and informed him that several men, armed with sticks, were chasing another man nearby.  Tr. #2 at 65-66.  Officer Dominick located the group, including Brown, and was told by Pinet that a woman had been

raped on Shonnard Street. Id. at 68-71. Officer Jeffrey McManus stopped Brown, who fit

the description of a suspect reported over the radio by Officer Dominick. Id. at 68; Tr. 33 at

9. Officer McManus observed that Brown was sweaty, breathing heavily, wearing grass-

stained clothing, and had a lump on his forehead. Tr. #3 at 9-10.

Officer Dominick traveled toward Shonnard Street and encountered A.C. while on his

way. Tr. #2 at 71. A.C. was shaking and distraught, and appeared to be in need of medical

attention. Id. at 73. Officer Dominick called an ambulance to treat A.C. Id. Before the

ambulance took A.C. to the hospital, Officer Dominick transported her to where Brown was

being held. Id. at 74. A.C. identified Brown as the person who caused her injuries. Id. The

group of men who had chased Brown also identified him as the alleged rapist. Tr. #3 at 11.

A.C. was taken to University Hospital and examined by Dr. Heramba Prasad. Tr. #3

at 83-85. Dr. Prasad observed that A.C. had swelling on the left side of her face, causing

her left eye to become almost shut. Id. at 86. A.C. also had pain in her cheek bone and

nasal bones. Id. A CT scan revealed no fractures, although A.C. testified that she

sustained hairline facial fractures. Tr. #2 at 116; Tr. #3 at 88. A.C. was unable to complete

a rape kit because she found the procedure too physically painful to endure. Tr. #2 at 116-

17. Dr. Prasad prescribed Percocet for A.C.'s pain. Tr. #3 at 89-90.

Officer Dominick searched Cathcart's apartment, with Cathcart's consent. Tr. #2 at

75. Officer Dominick observed blood on a mattress and sock. Id. Daniel Cowen, who

works at the "crime lab" at the Onondaga County Center for Forensic Sciences, found blood

on multiple items: the handle of the golf club used to assault Brown; a T-shirt; and two

swabs taken from Cathcart's apartment—one from the mattress, and the other from the

sock. Tr. #3 at 108-17. DNA profiles from A.C., Brown, and Pinet were compared to the

DNA profiles obtained by Cowen's analysis. Id. at 120-32. The comparison revealed that A.C. was the major contributor of the DNA profile found on the golf club head. Id. at 134-35. Brown and Pinet were excluded as possible contributors to the golf club bloodstain, however, there was another, unidentified, contributor to that bloodstain. Id. at 137. The swabbing of the golf club handle revealed at least four DNA contributors. Id. at 139. As to the golf club handle, Pinet could not be excluded as a possible contributor, Brown could not be included or excluded as a possible contributor, and A.C. was excluded as a possible contributor. Id. at 139-40. Only A.C.'s DNA was found on the T-shirt and the mattress. Id. at 141-42.

At the police station, after being read his Miranda rights, Brown told Detective Ralph Bowering that "this is bullshit, she traded me fair." Tr. #3 at 28-30. Brown explained to Detective Bowering that A.C. wanted to trade sex for drugs, and that A.C. had sex with Mason, and was also "supposed to" have sex with Brown, in exchange for crack cocaine. Id. at 31. Brown also stated that everyone present in Cathcart's apartment agreed that A.C. and Brown made a valid agreement, and that A.C. should honor the agreement. Id. A.C. and Brown then went to one of the bedrooms and had sex. Id. Brown stated that he barricaded the entrance to the bedroom with the mattress after hearing people pounding on the bedroom door. Id. When A.C. and Brown were finished having sex, a group of Hispanic men showed up at the apartment, A.C. yelled that she had been raped, and the Hispanic men attacked him. Id. Brown fought his way out of the apartment using a golf club and eventually encountered the police outside the apartment. Id. Brown did not sign a written statement because he stated that "he doesn't sign statements [because] that's not how he does things." Id. at 36-37.

### 2.  The Defense Case

Brown presented no witnesses at the trial.

### 3.  Verdict and Sentencing

On January 8, 2009, after a jury trial, Brown was found guilty of first-degree sexual abuse, and not guilty of first-degree rape.  Tr. #3 at 238-39.  On January 29, 2009, Brown was sentenced to a determinate incarceration term of five years, with five years post-release supervision.  Id. at 261.

### B.  Brown's Direct Appeal

Brown's attorney on direct appeal argued to the Appellate Division, Fourth Department that: (1) the trial and grand jury evidence was legally insufficient to establish sexual abuse in the first degree because there was no evidence of "sexual contact;" (2) the jury's inconsistent verdict was against the weight of the evidence; (3) the prosecutor deprived Brown of a fair trial by (i) referring to Brown as a "beast," "giant beast," and "giant defendant," (ii) improperly commenting on Brown's veracity, (iii) eliciting sympathy for the victim, and (iv) vouching for the victim's credibility; (4) Brown was deprived of his right to a fair trial based on the cumulative effect of several evidentiary errors, including (i) improperly admitted hearsay, (ii) the admission of irrelevant evidence, and (iii) the prosecution's improperly bolstering the credibility of multiple witnesses; and (5) the trial court erred in setting the expiration date of the order of protection, and imposed a harsh and severe

sentence.  State Record ("SR") (Dkt. Nos. 14, 14-1, 14-2) 001-052.[6]

Brown also filed a pro se supplemental brief arguing that: (1) the trial court lacked jurisdiction over him because the charge of sexual abuse in the first degree was not included in the felony complaint filed against Brown, nor was it a lesser included offense of any charge contained in the felony complaint; (2) the charge of sexual abuse in the first degree contained in the indictment was defective because it lacked specificity; (3) the indictment charges of rape by forcible compulsion in the first degree and sexual abuse in the first degree were duplicitous; and (4) the trial court erred in submitting the charge of sexual abuse in the first degree as a lesser included offense of rape in the first degree.  SR 230-241.

In a decision dated June 15, 2012, the Appellate Division, Fourth Department, denied Brown's Appeal.  SR 304-306; People v. Brown, 946 N.Y.S.2d 761 (N.Y. App. Div. 2012). The appellate panel concluded that Brown had failed to preserve for review the following claims: (1) the evidence was legally insufficient to support the conviction; (2) the alleged acts of prosecutorial misconduct; (3) the challenge to the testimony of two police officers regarding the out-of-court "showup" identifications made by certain witnesses; (4) Brown's contention that the order of protection issued by the Court did not comport with New York Criminal Procedure Law ("N.Y. Crim. Proc. Law") section 530.13; (5) the claim that the charge of sexual abuse in the first degree set forth in the indictment was not adequately specific; and (6) the claim that the charges of sexual abuse in the first degree and rape in the first degree contained in the indictment were duplicitous.  Id.

---

[6]  The page numbers following "SR" refer to the page numbers generated at the bottom center of each page of the State Record filed by Respondent.  See Dkt. Nos. 14, 14-1, 14-2.

The Appellate Division further found that even if Brown had preserved his legal sufficiency claim, his contention lacked merit. Id. at 304; Brown, 946 N.Y.S.2d at 762. Because the Appellate Division found that Brown's legal sufficiency claim lacked merit, it also found that Brown's claim that the evidence presented to the grand jury was insufficient was not reviewable on appeal. Id. The Appellate Division also rejected Brown's claim that his trial counsel was ineffective for failing to preserve his legal sufficiency challenge. Id.

The Appellate Division also rejected Brown's contention that the verdict was against the weight of the evidence and factually inconsistent because he had been acquitted of rape in the first degree. SR 305; Brown, 946 N.Y.S.2d at 762-63.

As to Brown's claim of prosecutorial misconduct, the Appellate Division found that any misconduct "'was not so pervasive or egregious as to deprive defendant of a fair trial.'" Brown, 946 N.Y.S.2d at 763 (quoting People v. Szyzskowski, 933 N.Y.S.2d 497 (N.Y. App. Div. 2011)). The Appellate Division also found that the County Court did not err in admitting out-of-court statements from witnesses that accused Brown of "rap[ing] a female." SR 305; Brown, 946 N.Y.S.2d at 763. Although the Appellate Division found that the County Court erred in allowing evidence of the alleged assault on the victim's boyfriend, it found that the error was harmless. Id.

The Appellate Division further rejected Brown's contention that the County Court lacked jurisdiction over the charge of sexual abuse in the first degree because it was not contained in the felony complaint, finding that the grand jury had the authority to consider offenses other than those named in the felony complaint. SR 306; Brown, 946 N.Y.S.2d at 763. Although the Appellate Division found that Brown had failed to preserve for review his argument that the indictment was not sufficiently specific as to the charge of sexual abuse in

the first degree, that argument lacked merit.  SR 306; <u>Brown</u>, 946 N.Y.S.2d at 763-64.

Finally, the Appellate Division found that Brown's argument that the counts charging him with rape in the first degree and sexual abuse in the first degree were duplicitous was moot, given that he was acquitted of rape in the first degree.  SR 306; <u>Brown</u>, 946 N.Y.S.2d at 764.

Additionally, Brown, with the assistance of counsel, sought appeal on each claim presented to the Appellate Division from the New York State Court of Appeals.  SR 307-341. By Order dated September 28, 2012, the Court of Appeals denied Brown's application for leave to appeal.  <u>Id.</u> at 343.

### C. Brown's Motion to Vacate the Judgment

On August 27, 2013, Brown filed a <u>pro se</u> motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law section  440.10.  SR 344-381.  Brown argued that the count in the indictment charging sexual abuse in the first degree was "illegally added" to the indictment.  <u>Id.</u> at 352.  He further argued that there was a variance between the charge he was arrested for and arraigned on and the charge that he was convicted of, and that the addition of the charge of sexual abuse in the first degree substantively changed the indictment and the theory of the prosecution.  <u>Id.</u>

N.Y. Crim. Proc. Law section 440.10(2)(b) requires a court to deny a motion to vacate a judgment when "sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."  N.Y. CRIM. PROC. L. § 440.10(2)(b).  On February 11, 2014, the Onondaga County Court denied Brown's motion.  SR 404-408.  The County Court found that, contrary to Brown's assertion

-11-

that the count charging him with sexual abuse in the first degree was "illegally added" to the indictment, the count charging him with sexual abuse in the first degree was never added to the indictment. Id. at 405-406. Rather, the grand jury voted to indict Brown on that count after determining that the evidence presented established reasonable cause to believe that Brown committed that crime. Id. at 406. The County Court also found that, to the extent that Brown argued that the charge of sexual abuse in the first degree was legally insufficient, the claim must be denied pursuant to N.Y. Crim. Proc. Law section 440.10(2)(a) because that claim had already been rejected on the merits on direct appeal. Id. at 406-407. Brown's remaining contentions were found to be without merit, and the County Court denied Brown's motion in its entirety. Id. at 407.

Brown sought leave to appeal the County Court's denial to the Appellate Division, Fourth Department. SR 409-481. On May 19, 2014, the Appellate Division denied Brown's application. Id. at 483-484.

## II. Discussion

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas review only if state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(1)-(2). When evaluating a habeas petition,[7] "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal court may not review the habeas petition if the state court's application of Supreme Court precedent was "objectively reasonable." Id. at 409.

## B. Exhaustion

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b)-(c); Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir.

---

[7] Respondent concedes that Brown's pro se petition is timely. Resp't Mem. of Law at 15. The AEDPA imposes a one year statute of limitations period to a petitioner's application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The statute of limitations may run from "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" Id. § 2244(d)(1)(A). A judgment of conviction becomes final at the conclusion of the ninety day period during which the defendant could seek certiorari review from the United States Supreme Court. Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001). Here, Brown's conviction became final on December 27, 2012, ninety days after the New York State Court of Appeals denied his leave to appeal. See SR 343. However, the AEDPA statutory limitation may be tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). "[A]n application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." McPherson v. Burge, No. 9:06-CV-1096 (GTS/VEB), 2009 WL 1293342, at *5 (N.D.N.Y. May 5, 2009) (citations omitted). Thus, the statute of limitations under the AEDPA was tolled from August 27, 2013, through May 15, 2014, while Brown was seeking to vacate the judgment of conviction against him pursuant to N.Y. Crim. Proc. Law 440.10(1). Therefore, Brown's petition, filed on July 28, 2014, is timely under the AEDPA. See Dkt. No. 1.

2003) (quoting <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001) (additional citation omitted). State courts must have examined "'both the factual and legal premises of the claim [the petitioner] asserts in federal court.'" <u>Mobley v. Senkowski</u>, Nos. 01-CV-6301 (JBW), 03-MISC-0066 (JBW), 2003 WL 22952846, at *2 (E.D.N.Y. Nov. 12, 2003) (quoting <u>Daye v. Attorney Gen. of the State of N.Y.</u>, 696 F.2d 186, 191 (2d Cir. 1982)). The petitioner may alert the state court to his federal claim by citing the Constitution, relying on federal case law, relying on state cases employing constitutional analysis to a similar fact pattern, stating the claims in a specific way as to contemplate a constitutional provision, or presenting a fact pattern that is common in constitutional litigation. <u>Daye</u>, 696 F.2d at 194.

**1. Grand Jury and Trial Evidence Legally Insufficient to Prove First Degree Sexual Assault**

Brown contends that, because the prosecution presented no evidence of sexual contact, it failed to establish the elements of sexual abuse in the first degree. Pet. at 5. Brown raised this claim in his applications to the Appellate Division and the Court of Appeals. SR 014-017, 309.

**i. Trial Evidence**

Respondent argues that Brown's challenge to the sufficiency of the trial evidence is barred because the Appellate Division found that Brown had failed to preserve the claim for review. Resp't Mem. of Law at 22. Respondent further argues that the Appellate Division's alternative rejection of this claim on the merits was not contrary to, or based on an unreasonable application of Supreme Court law. <u>Id.</u>

Federal habeas review of a state court conviction is prohibited if a state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991) (citations omitted) (noting that if the court were to resolve an issue resting on independent federal grounds, the decision would be merely advisory, as the "Court has no power ro review a state law determination that is sufficient to support the judgment[.]"); see also Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003). Although the Supreme Court has held that the "independent and adequate state ground" doctrine is not "technically jurisdictional," the doctrine still bars the consideration of federal claims that are in procedural default under state law. Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (explaining that because the federal courts do not formally review a judgment upon a habeas application, the "independent and adequate state ground" doctrine is not jurisdictional). New York law provides that

> [a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . . [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

N.Y. CRIM. PROC. LAW § 330.30(1). Applying this standard, "an insufficiency [of the evidence] argument may not be addressed unless it has been properly preserved for review during the trial." People v. Hines, 97 N.Y.2d 56, 61 (N.Y. 2001). To preserve this argument during trial, the defendant must "seek a trial order of dismissal '[a]t the conclusion of the people's case or at the conclusion of all the evidence.'" Holguin v. Lee, No. 13-CV-1492(LGS)(JLC), 2014 WL 5508331, at *10 (S.D.N.Y. Oct. 31, 2014) (quoting N.Y. CRIM.

PROC. LAW § 290.10).  Additionally, "'the argument must be specifically directed at the error being urged.'"  Id. (quoting People v. Hawkins, 11 N.Y.3d 484, 492 (N.Y. 2008)) (internal quotations marks and citations omitted).  This requires the defendant to "specifically identif[y] the flaw in the People's proof."  People v. Finch, 23 N.Y.3d 408, 414 (N.Y. 2014).

In this case, the Appellate Division held that Brown failed to preserve his challenge to the legal sufficiency of the evidence, "inasmuch as his motion for a trial order of dismissal was not 'specifically directed at the same alleged shortcoming in the evidence raised on appeal.'"  SR 304; Brown, 946 N.Y.S.2d at 1562.  Because the Appellate Division relied on People v. Gray, 86 N.Y.2d 10 (N.Y. 1995), to determine that Brown had not preserved his challenge to the sufficiency of the evidence, this claim is procedurally barred as the state court judgment rests on an adequate and independent state ground.[8]  See Pringle, 2012 WL 3614184, at *6 (citing Harris v. Reed, 486 U.S. 255, 260-61 (1989)).  Here, trial counsel moved for a general order of dismissal at the close of the People's case, and again after the verdict was rendered, (Tr. #3 at 153-54, 241-42), on the ground that the People's proof was insufficient to prove the elements of the crimes charged.  See id.; People v. Hawkins, 11 N.Y.3d 484, 493 (N.Y. 2008) (holding that the defendant failed to preserve his legal insufficiency claim where the motion "did little more than argue that the People failed to prove the essential elements of [the crime charged].").  The Court finds that the Appellate Division relied upon a state ground independent of the federal question presented, and

---

[8]  The Second Circuit deems New York's preservation rule as independent and "adequate—i.e., firmly established and regularly followed."  Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007).  The purpose of the preservation rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is to apprise the trial court at an appropriate time and in an appropriate manner so that the trial court can consider the objection and remedy the problem, if need be, in order to prevent a reversible error.  Pringle v. Bradt, No. 11-CV-06504, 2012 WL 3614184, at *7 (W.D.N.Y. Aug. 21, 2012).  A general objection failed to achieve that purpose.  See Richardson, 497 F.3d at 218.

-16-

adequate to support the judgment in rejecting Brown's challenge to the insufficiency of the evidence. Thus, this claim is procedurally barred from federal habeas review.

As the state court conviction rests on an independent and adequate state ground, this Court cannot review Brown's legal sufficiency claim unless he can show cause and prejudice, or that a fundamental miscarriage of justice would occur should the Court decide not to consider his claim. See Coleman, 501 U.S. at 750. Brown has failed to make such a showing. However, even if the Court were to consider Brown's rehashing of the merits of his claim as an attempt to demonstrate prejudice, such argument is defeated by the Appellate Division's alternative holding that Brown's legal insufficiency claim failed on the merits. SR 304; Brown, 946 N.Y.S.2d at 1562; see also Pringle, 2012 WL 3614184, at *7.

Accordingly, it is recommended that Brown's petition on this issue be denied as procedurally barred.


### ii. Grand Jury Evidence

Brown argues that the evidence presented to the grand jury was legally insufficient to support the count charging him with sexual abuse in the first degree. Pet. at 5. Respondent argues that Brown's challenge to the sufficiency of the grand jury evidence is not cognizable on habeas review. Resp't Mem. of Law at 22.

Brown does not have a federal constitutional right to a grand jury in a state criminal proceeding, although "the state's implementation of its grand jury process may not violate the federal Constitution." Velazquez v. Poole, 614 F. Supp. 2d 284, 330 (E.D.N.Y. 2007) (citation omitted). "[A]llegations that the evidence was insufficient to indict, are not cognizable in federal habeas corpus proceedings[.]" Blond v. Graham, No. 9:12-cv-1849-

JKS, 2014 WL 2558932, at *12 (N.D.N.Y. June 5, 2014).  In any case, where a petit jury

renders a guilty verdict, any error in the grand jury proceedings is rendered "'harmless

beyond a reasonable doubt.'" Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (quoting United

States v. Mechanik, 475 U.S. 66, 70 (1986)) (citation omitted).

      Accordingly, it is recommended that Brown's petition on this grounds be denied.


### 2.  Guilty Verdict Inconsistent and Against the Weight of the Evidence

      Brown claims that the jury's verdict finding him guilty of sexual abuse in the first

degree was inconsistent with the jury's acquitting him of rape in the first degree, and is

against the weight of the evidence.  Pet. at 7.  Respondent argues that both of these claims

are procedurally defaulted, and that even if the claims were not procedurally defaulted, they

are not cognizable on habeas review.  Resp't Mem. of Law at 27-29.  The Court agrees, as

Brown failed to raise the claims in federal constitutional terms in his direct appeal.  See SR

018-027.

      Even if these claims were not procedurally defaulted, the Supreme Court has held

that the federal Constitution does not prohibit a jury from rendering an inherently

inconsistent verdict.  People v. Muhammad, 17 N.Y.3d 532, 538 (N.Y. 2011) (citing United

States v. Powell, 469 U.S. 57, 69 (1984)) (additional citations omitted).  "Indeed, courts

recognize that inconsistent verdicts are often a product of jury lenity, which courts will not

review." Torres v. Costello, No. 97-CV-5480 (RR), 2001 WL 811924, at *11 (E.D.N.Y. June

1, 2011) (citing United States v. Dunn, 284 U.S. 390, 394 (1932)).  Thus, the Court cannot

grant Brown habeas relief on that claim alone.  See Suarez v. Bennett, 207 F. App'x 114,

116 (2d Cir. 2006) (stating that a federal court cannot grant habeas relief "simply because a

jury's verdict is inconsistent."). The Supreme Court has upheld "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons." Harris v. Rivera, 454 U.S. 339, 346 (1981). As such, Brown's petition on this ground should be denied, because as explained infra, the evidence was legally sufficient to uphold his conviction for sexual abuse in the first degree.

As to Brown's weight of the evidence claim, it is well-settled that this argument is a pure state law claim, differing from a legal insufficiency claim, which is based on federal due process. Gutierrez v. Ricks, No. 02 Civ. 3780 (BSJAJP), 2002 WL 313160417, at *6 (S.D.N.Y. Oct. 21, 2002) (citations omitted) (collecting cases). As such, this claim is barred from habeas review.

Accordingly, it is recommended that these claims be denied in their entirety.


### 3. Prosecutorial Misconduct

Brown alleges multiple instances of prosecutorial misconduct. Pet. at 8. Respondent concedes that Brown exhausted all claims of prosecutorial misconduct. Resp't Mem. of Law at 19. Indeed, Brown raised these claims in his direct appeal to the Appellate Division, and in his leave application to the New York State Court of Appeals, and cited the United States Constitution. SR 028-038, 309. Therefore, Brown's prosecutorial claims are exhausted.


### 4. Ineffective Assistance of Counsel

Brown claims that his trial counsel was ineffective by (1) failing to object to the insufficiency of the evidence; (2) failing to object to the prosecutor's misconduct; (3) failing to

object to the jury charge that included a charge of sexual abuse in the first degree; (4) failing to object to photographs and other evidence of uncharged crimes; and (5) failing to file a notice of appeal. Pet. at 10. Respondent argues that Brown's claims that his trial counsel failed to object to the county court's submission of the sexual abuse charge to the jury, and his failure to file a notice of appeal are procedurally barred. Dkt. No. 13-1 at 19-21. Respondent concedes that the rest of Brown's ineffective assistance claims are exhausted. Id. at 34.

Brown failed to raise, at any appellate level, his contention that he received ineffective assistance of counsel by his trial counsel's failure to object to the jury charge that included a sexual abuse count, and his trial counsel's failure to file a notice of appeal. Therefore, such claims are procedurally defaulted. See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). As stated above in section III.B.1.i, supra, Brown has also failed to argue cause and prejudice for his failure to raise these claims at the state court level, and has also failed to show that a fundamental miscarriage of justice would occur if the Court denies to review these claims. See Reyes v. Keane, 118 F.3d 136,139-40 (2d Cir. 1997) (finding that the petitioner's "unjustifiable failure" to raise claim on direct appeal makes the claim effectively exhausted, but barred from habeas review for the petitioner's failure to show cause for the omission).

Accordingly, it is recommended that Brown's claims that his trial counsel was ineffective by (1) failing to object to the submission of the sexual abuse in the first degree jury charge, and (2) failing to file a notice of appeal be denied as procedurally barred.

## 5. Remaining Claims

Brown argues that (1) the trial court imposed a harsh and severe sentence; (2) the trial court lacked subject matter jurisdiction; (3) the count charging sexual abuse in the first degree is duplicitous and lacks specificity; and (4) the indictment was illegally amended to add a charge of sexual abuse in the first degree. Pet. at 16-17. Respondent failed to respond to any grounds raised in the additional pages submitted by Brown in his petition. As explained below, the claims are without merit.

Additionally, Brown argues that the trial court erred by (1) allowing the admission of a prejudicial hearsay statement made outside of court, and (2) allowing the prosecutor to use evidence of uncharged crimes. Pet. at 16. Brown raised claims based on alleged evidentiary errors by the trial court to both the Appellate Division, and the Court of Appeals. SR 039-045, 309. These claims are, therefore, exhausted.

## C. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition. Rhines v. Weber, 544 U.S. 269, 271 (2005). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Rhines, 544 U.S. at 275. The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on good cause. Id. at 277. However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless. Id. (citation omitted).

Here, Brown has not provided good cause for his failure to exhaust his claims. Accordingly, this Court reviews the merits of these claims.

## D. Merits

### 1. Trial Evidence Legally Sufficient and Verdict Not Against the Weight of the Evidence

A petition for habeas corpus relief arguing that the evidence adduced at trial was legally insufficient to support a conviction faces a heavy burden.  The Supreme Court articulated the standard as "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Under this standard, the record evidence is viewed in the light most favorable to the prosecution. Id. at 319.  This "standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.  A verdict based exclusively on circumstantial evidence can suffice under this standard, as "the government is not required to refute every possible hypothesis supporting the defendant's innocence." Graham v. Lape, 476 F. Supp. 2d 399, 403 (S.D.N.Y. 2007).

In considering the sufficiency of a state conviction, this court must look to state law to determine the elements of the crime. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).  Here, Brown was convicted of sexual abuse in the first degree.  Tr. #3 at 238-39.  Under New York Penal Law, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . by forcible compulsion."  N.Y.

PENAL LAW § 130.65.  The term "sexual contact" means "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party."  Id. § 130.00(3).  The term "forcible compulsion" means "to compel by . . . use of physical force; or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped."  Id. § 130.00(8).

As to the first element, the prosecution established "sexual contact" from the testimony of the victim, A.C.  A.C. testified that Brown punched her in the face, dragged her from the bathroom to the bedroom, pulled off her shorts, and "inserted his penis in [her] vaginal area."  Tr. #2 at 108-09.  A.C. also testified that Brown had her pinned to the bed, with his knees on either side of her.  Id. at 110.  Additionally, Brown later admitted to Detective Bowering that he had made a deal with A.C. to trade drugs for sex and that Brown took A.C. to the bedroom and had sex with her.  Tr. #3 at 31.  Brown clearly takes issue with the fact that A.C. testified that Brown had sex with her, yet he was acquitted of rape and convicted of the lesser charge of sexual abuse.  See Pet. at 5.  However, the jury could have reasonably thought that, although A.C. testified that Brown had sex with her, and Brown confessed that he had sex with A.C. to Detective Bowering, the evidence established only sexual contact.  A.C. testified that Brown "inserted his penis in [her] vaginal area."  Tr. # 2 at 109.  When asked by the prosecutor, A.C. said that they had sex, but she later refused a rape kit due to pain in her vaginal area  Id. at 116-17.  Based on this evidence, the jury could have easily found beyond a reasonable doubt that Brown engaged in sexual contact with A.C.

As to the second element of forcible compulsion, there was also sufficient evidence

for the jury to determine beyond a reasonable doubt that Brown used physical force against A.C. First, George Anthony testified that Brown became upset when A.C. would not follow through on the "deal" that they had entered into. Tr. #2 at 158. Then, Anthony heard, but did not see, Brown in the bedroom with A.C., telling her that she was going to "do what [he told] her" and "take care of [him]." Id. at 159. Anthony then heard a "smack" from the bedroom and A.C. emerged, and her face was bleeding. Id. A.C. corroborated this account from Anthony, and testified that Brown came into her bedroom asking for "payment," and that when she resisted, Brown "backhanded" her, causing her nose to bleed. Id. at 107. She testified that she ran to the bathroom, Brown followed her, punched her, and dragged her back to the bedroom. Id. at 108-09. A.C. testified that, in the bedroom, Brown pushed her down on the bed and forced himself on her. Id. at 109. She stated that Brown was on top of her, with his knees on either side of her. Id. at 110. Although Brown's trial counsel argued during his summation that A.C.'s account of her and Brown's respective positions on the bed was implausible, the jury was free to discount that explanation, and find A.C.'s account credible. See Tr. #3 at 165. Indeed, "assessments of the weight of the evidence or the credibility of witnesses are for the jury, and not grounds for reversal on appeal; [the Court] defer[s] to the jury's assessments of both of these issues." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted).

Based on the evidence recounted above, the Court finds that the jury could have determined beyond a reasonable doubt that Brown committed sexual abuse in the first degree. Accordingly, Brown's petition on this issue is without merit.

## 2. Prosecutorial Misconduct

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, not the broad exercise of supervisory power." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1999) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)) (internal quotation marks and citation omitted). The question before a federal habeas court is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Id. Even if the Court were to find that the prosecutor committed misconduct, the petitioner must show that the misconduct caused actual prejudice. Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994) (explaining that, in the habeas context, the burden shifts to the petitioner to show actual prejudice) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)).

First, Brown argues that the prosecutor called him a "beast" and a "master manipulator." Pet. at 8. Indeed, during Kenneth Mason's direct examination, the prosecutor asked Mason if Brown had a nickname. Tr. #2 at 202. Mason answered that Brown's nickname was "Beast." Id. Brown's counsel objected. Id. The trial judge then clarified that the name "Beast" was the name by which Mason knew Brown, and the trial judge stated: "That's the extent of that, all right." Id. The prosecutor then asked Mason two questions where he used the nickname "Beast" to refer to Brown. Id. at 202-03. Later, during the prosecutor's summation, the prosecutor again referred to Brown's nickname by stating that Brown was a "giant beast" on top of the victim. Tr. #3 at 180-81. Defense counsel objected, and the trial judge issued a limiting instruction, instructing the jury to disregard the use of the nickname. Id. at 181. The prosecutor also referred to Brown as a "master manipulator" during her summation. Id. at 184.

Respondent argues that (1) the jury is presumed to follow the court's instruction and

disregard the use of the nickname insofar as defense counsel objected to the use of the nickname and (2) the prosecutor's use of the terms " beast" and "master manipulator" during summations were in response to defense counsel's summation.  Resp't Mem. of Law at 31-32.

The Court finds that the prosecutor's use of Brown's nickname, "Beast," was not so egregious as to deprive him of a fair trial.  The jury first heard Brown referred to as "Beast" when Mason identified Brown by that nickname.  Tr. #2 at 202.  The prosecutor then referred to Brown twice using the nickname "Beast" during Mason's direct examination, and then again during the summation.  Id. at 202-03; Tr. #3 at 180-81.  The use of the nickname was occasional, and was not used so often as to amount to a "flagrant abuse."  United States v. Farmer, 583 F.3d 131, 147 (2d Cir. 2009) (citing United States v. Aloi, 511 F.2d 585,602 (2d Cir. 1975)) (additional citations omitted).  For example, in Farmer, the Second Circuit found that the prosecutor had engaged in a "tactical misuse" of the defendant's nickname where the prosecutor had referenced the nickname more than thirty times during the rebuttal summation alone.  Id.  Here, the prosecutor used the name "Beast" twice in reference to the name by which Mason knew Brown, and only twice during the summation.  Tr. #2 at 202-03; Tr. #3 at 180-81.  Additionally, the trial judge instructed the jury to disregard the prosecutor's remarks during the summation, and instructed the prosecutor to not use the nickname again.  Tr. #3 at 181.  The prosecutor complied.  The law presumes that jurors follow limiting instructions.  United States v. Jass, 569 F.3d 47, 55 (2d Cir. 2009) (citing Richardson v. Marsh, 481 U.S. 200, 206 (1987)).  Here, the Court finds that Brown has failed to show that he was actually prejudiced by the prosecutor's alleged misconduct.

The Court reaches the same conclusion in regard to the prosecutor's characterization

of Brown as a "master manipulator." "Statements made by prosecutors in their summation, even if seemingly improper, do not necessarily exceed 'the broad range of rhetorical comments allowed in closing arguments.'" Jones v. Keane, 250 F. Supp. 2d 217, 237 (W.D.N.Y. 2002) (finding that the prosecutor's attempts to demonstrate that the defendant was manipulative during summation did not constitute prosecutorial misconduct) (quoting Harper v. Kelly, 704 F. Supp. 375, 379 (S.D.N.Y. 1989), rev'd on other grounds, 916 F.2d 54 (1990)) (additional citation omitted).

Further, the Court agrees with Respondent that the prosecutor's characterization of Brown as a "master manipulator" was responsive to defense counsel's statements during summation that attempted to characterize A.C. as deceitful. See Tr. #3 at 163, 166-67, 172. The prosecution attempted to rebut defense counsel's statement by framing Brown as a manipulator, through his admissions that A.C. had willingly traded crack for sex. Id. at 178-80, 184. The prosecutor's statements did not amount to prosecutorial misconduct. See Torres v. Mazzuca, No. 05 Civ. 3970(KMW)(KNF), 2008 WL 2467051, at *14 (S.D.N.Y. June 17, 2008) (finding that the prosecutor's characterization of the defendant as a manipulator was responsive to defense counsel's attempts to discredit the testimony of the victim).

Second, Brown argues that the prosecutor "implied that [he] was a criminal and a drug addict." Pet. at 8. Brown does not specify which statements he believes were improper, but briefs submitted at the state court level indicate that Brown takes issue with the prosecutor's statement during her summation that the men who Brown associated with the night of the crime were drug users and all had criminal records. Tr. #3 at 173-74. The prosecutor also stated that Brown did not dispute that he associated with these people. Id. The Court also assumes that Brown's contention that the prosecutor "shift[ed] the burden of

-27-

proof" applies to these statements. <u>See</u> Pet. at 8.

Even if the Court were to find that the prosecutor's remarks regarding Brown's association with the witnesses mentioned were inappropriate, the remarks do not justify habeas relief. "[I]mproper conduct by the prosecution during summation must be considered in light of any curative instruction from the trial court, the severity of the comment, and the likelihood of conviction if the statement had not been made." <u>King v. Greiner</u>, No. 02Civ.5810(DLC)(AJP), 2008 WL 4410109, at *32 (S.D.N.Y. Sept. 26, 2008) (collecting cases). Respondent argues that the prosecutor's comment was "based on the proof" because Detective Bowering testified that Brown admitted that he was present in the house with A.C., and that he had made a deal with A.C. by which he traded crack-cocaine for sex. Resp't Mem. of Law at 33. The Court finds that the prosecutor's statement was in response to defense counsel's summation, in which he portrayed the witnesses who were at the apartment at the time of the crime as unreliable and unsavory. In short, the prosecutor portrayed Brown to the jury as no better than the witnesses attacked by defense counsel. Although the prosecution's "implied propensity argument" was inappropriate, it did not "sufficiently infect[] the trial so as to make it fundamentally unfair[.]" <u>Pope v. Lord</u>, No. 00-CV-6530 (JBW), 2003 WL 21812455, at *6 (E.D.N.Y. July 23, 2003). The Court instructed the jury not draw any unfavorable inference from the fact the Brown did not testify. Tr. #3 at 191. Additionally, the comment was not "severe," and Brown's conviction was likely despite it. The victim testified that Brown had pinned her to the bed and forced his penis into her vaginal area. Tr. #2 at 109. George Anthony testified that he observed Brown naked in the same bedroom as A.C., and that A.C.'s face was beaten. <u>Id.</u> at 159. A second witness, Kenneth Mason, observed this as well. <u>Id.</u> at 216. Brown also made the comment to

Detective Bowering that A.C. had "traded [him] fair," meaning sex for crack-cocaine.  Tr. #3

at 31.  Based on this record, Brown has failed to show that he is entitled to habeas relief on

this ground.

Thus, Brown's petition on this issue is without merit.


### 3.  Ineffective Assistance of Counsel

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. AMEND.

VI.  "[T]he right to counsel is the right to the effective assistance of counsel."  McMann v.

Richardson, 397 U.S. 759, 771 n.14 (1970).  To prevail on this claim, the petitioner must

satisfy a two-prong test showing that his counsel's performance was deficient and that such

deficient performance caused actual prejudice to the petitioner.  Strickland v. Washington,

466 U.S. 668, 687 (1984).  "Deficient performance" requires the petitioner to show that

defense counsel's performance "fell below an objective standard of reasonableness."

Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 688).

"Prejudice" requires the petitioner to show that there is a reasonable probability that, but for

counsel's deficient performance, the outcome would have been different.  Strickland, 466

U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  Id.

Federal courts apply a "highly deferential" standard of review for a claim of ineffective

assistance of counsel alleged in a habeas corpus petition.  Premo v. Moore, 562 U.S. 115,

124 (2011).  A federal habeas court must not equate unreasonableness under the Strickland

standard with unreasonableness under 28 U.S.C. § 2254(d) for once the latter applies, "the

question is not whether counsel's actions were reasonable . . . [but it is] whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

First, Brown argues that his trial counsel "failed to object to the insufficiency of the evidence." Pet. at 10. As previously discussed, to present a legal insufficiency argument, the argument must be properly preserved for review. See section II.B.1.i, <u>supra</u>. Although this issue was not properly preserved for habeas review, trial counsel did make a general motion to dismiss all counts after the People presented their case. Tr. #3 at 153-54. The trial court judge "[found that] the People [had] presented a legally sufficient case." <u>Id.</u> at 155. Thus, Brown's petition on this issue is without merit.[9]

Second, Brown argues that trial counsel failed to object to the prosecutor's misconduct. Pet. at 10. Brown has failed to specify what alleged misconduct his trial counsel failed to object to. To the extent that Brown argues that trial counsel failed to object to remarks that the prosecutor made during summations, such an argument is without merit, as this could be trial counsel's "tactical decision to avoid underscoring the prosecutor's statement so as to draw the jury's attention to them." <u>Gatto v. Hoke</u>, 809 F. Supp. 1030, 1039 (E.D.N.Y. 1992) (citing <u>United States v. Grunberger</u>, 431 F.2d 1062, 1068-69 (2d Cir. 1970)). Additionally, Brown's counsel did object twice to the prosecutor's use of the term "beast" to describe Brown. Tr. #2 at 202; Tr. #3 at 180-81. Thus, Brown's petition on this issue is without merit.

Third, Brown argues that his trial counsel failed to object to the count charging sexual abuse in the first degree being submitted to the jury. Pet. at 10. This argument is baseless,

_____

[9] To the extent Brown argues prosecutorial misconduct based on the prosecutor's use of evidence of uncharged crimes, that claim is addressed in section II.D.4 <u>infra</u>.

-30-

as the trial court denied defense counsel's motion to dismiss all counts in the indictment because the People had "presented a legally sufficient case." Tr. #3 at 155. Thus, Brown's petition on this issue is without merit.

Fourth, Brown argues that his trial counsel failed to file his notice of intent to appeal. Pet. at 10. Brown does not allege that he instructed his counsel to file a notice of appeal, and he did litigate his state appeal, with appellate counsel. As such, Brown has failed to show prejudice under the <u>Strickland</u> standard. Thus, Brown's petition on this issue is without merit.

### 4. Evidentiary Errors by Trial Court

Brown argues that the trial court erred by (1) allowing into evidence an out-of-court hearsay statement that was highly prejudicial and (2) allowing evidence of uncharged crimes. Pet. at 16. The Appellate Division held that the trial court did not err in allowing a witness to testify that he and others had told police that Brown "raped a female" because the statement was not hearsay. SR 305. The Appellate Division further held that the trial court did abuse its discretion in admitting testimony and evidence of an uncharged crime, but that the error was harmless. <u>Id.</u>

Generally, habeas corpus relief from state court evidentiary rulings are "available '*only* where [the] petitioner can show that the error deprived [him] of a fundamentally fair trial.'" <u>Wright v. Duncan</u>, 31 F. Supp. 3d 378, 416 (N.D.N.Y. 2011) (quoting <u>Taylor v. Curry</u>, 708 F. 2d 886, 891 (2d Cir. 1983) (emphasis in original)). Thus, where the Appellate Division has ruled on the merits of Brown's claims, this Court must determine if the Appellate Division's decision amounted to an unreasonable application of federal law, as

determined by the Supreme Court of the United States.  Id.

First, Brown objected to George Anthony's statement that he told police that Brown had just raped a female.  See Tr. #2 at 164-65.  The Appellate Division held that the trial court did not err in admitting the out-of-court statement on the basis that "it 'was not received for its truth but [instead was received] for the legitimate, nonhearsay purpose of completing the narrative of events and explaining police actions[.]'" SR 305 (citing People v. Perez, 849 N.Y.S.2d 514, 516, lv. denied, 10 N.Y.3d 843).  Where testimony containing hearsay is offered for a non-hearsay purpose as background information, such testimony is admissible where "1) 'the non-hearsay purpose by which the evidence is sought to be justified is relevant,' and (2) 'the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement.'" Ryan v. Miller, 303 F.3d 231, 252-53 (2d Cir. 2002) (quoting United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994)).  In New York, "hearsay testimony is admissible to show 'how and why the police pursue[ ] and confront[ ] a defendant." Jones v. Rivera, No. 06-CV-5982 (JFB), 2008 WL 2004168, at *13 (E.D.N.Y. May 7, 2008) (quoting People v. Tosca, 98 N.Y.2d 660, 661 (N.Y. 2002)) (additional citation omitted).  Here, Anthony testified that he alerted police to the reason why Brown was being chased by a group of men, and the police subsequently arrested Brown.  Tr. #2 at 164-65. Hence, his statement was properly admitted for its non-hearsay purpose.  See Simpson v. Donnelly, No. 00 Civ. 3284(LTS)(RL., 2002 WL 31684800, at *8 (S.D.N.Y. Nov. 14, 2002) (upholding conviction where statement implicating the defendant was admitted "not for the truth but to show how the police formed probable cause to arrest [the defendant]."); People v. Brown, 554 N.Y.S.2d 492, 494 (N.Y. App. Div. 1990) (upholding the admission of civilian

testimony where "the evidence was received for the purpose of completing the narrative and enhancing the jury's understanding of the crime charged.")

Second, Brown argues that the prosecutor used evidence of "uncharged crimes." Pet. at 8. The Court interprets this statement as referring to testimony and photographic evidence related to the alleged assault of A.C.'s boyfriend. The Appellate Division held that Brown had only preserved for review his claims involving a portion of the testimony and photographic evidence of the alleged assault. SR 305; Brown, 946 N.Y.S.2d at 763. To the extent that Brown had preserved this claim, the Appellate Division agreed that the trial court had abused its discretion in allowing the evidence, but held that the trial court's error was harmless. Id.

In reviewing an explicit state appellate court determination of harmless error, the Second Circuit previously held that the habeas court should apply the standard of review established in Chapman v. California, 386 U.S. 18, 24 (1967). Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004). The Chapman standard states "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24. However, more recently, and following much debate about whether the standard under Chapman, or the standard under Brecht v. Abrahamson, 507 U.S. 619 (1993) should be applied to determine harmless error, the Second Circuit appears to have settled on the Brecht standard following the Supreme Court's decision in Fry v. Pliler, 551 U.S. 112 (2007). Wood v. Ercole, 644 F.3d 83, 93 (2d Cir. 2011). The Supreme Court held in Fry v. Pliler, that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht . . .

-33-

whether or not the state appellate court recognized the error and reviewed it for harmlessness under . . . Chapman." 551 U.S. 112, 121-22 (2007). Under the Brecht standard, an evidentiary error must be evaluated by whether it "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 638. Factors to be considered include, "the importance of the wrongly admitted evidence and the overall strength of the prosecution's case[,] . . . whether the evidence bore on an issue . . . plainly critical to the jury's decision, and whether it was material to the establishment of the critical fact, or whether it was instead corroborated and cumulative[.]" Wood, 644 F.3d at 97 (internal quotation marks and citations omitted).

Here, it is clear that the evidence admitted did not bear on a fact plainly critical to the jury's decision, nor was it material to the establishment of critical facts. Brown's alleged assault on Pinet has no bearing on the events that comprised the count charging sexual abuse in the first degree, of which Brown was ultimately convicted. Additionally, given the evidence against Brown, the prosecution's brief segue into the alleged assault on Pinet did not have a substantial or injurious effect on the jury's decision. See Johnson v. Artus, No. 09 Civ. 9483(PAC)(AJP), 2010 WL 3377451, at *21 (S.D.N.Y. Aug. 26, 2010) (collecting cases).

Finally, as the Court noted in Johnson, the Supreme Court has yet to establish clear precedent on when due process rights are violated by the admission of uncharged crimes. Johnson, 2010 WL 3377451, at *22. As such, the Court finds that it cannot hold that the Fourth Department's finding of harmless error is an unreasonable application of Supreme Court precedent. See Stenson v. Heath, No. 11 Civ. 5680(RJS)(AJP), 2012 WL 48180, at *15 (S.D.N.Y. Jan. 10, 2012) (finding that, even assuming that the trial court misapplied New

-34-

York law in allowing evidence of uncharged crimes, the Supreme Court has yet to establish clear precedent).

Accordingly, the Court finds that Brown's petition on these issues is without merit.

### 5. Imposition of a Harsh and Severe Sentence

Brown argues that his sentence is harsh and severe, because before trial he had rejected an offer to plead to assault in the second degree and serve a four-year prison term. Pet. at 16.  Respondent does not address this contention.

Brown was convicted of sexual abuse in the first degree, a class D violent felony. See N.Y. PENAL LAW §§ 70.02(1)(c); 130.65.  New York Penal Law dictates that a person convicted of a class D violent felony offense must serve a term of at least two years, but not more than seven years.  Id. § 70.02(3)(c).  Brown was sentenced to a determinate prison term of five years, with a five-year post-release supervision period.  Tr. #3 at 261.  "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989)).  Brown's contention that he was offered a four-year prison term before trial does not change the analysis because "'given that the *quid pro quo* of the bargaining process will almost necessarily involve offers to moderate sentences that ordinarily would be greater, it is also to be anticipated that sentences handed out after trial may be more severe than those proposed in connection with a plea.'"  People v. Martinez, 26 N.Y.3d 196, 200 (N.Y. 2015) (quoting People v. Pena, 50 N.Y.2d 400, 412 (N.Y. 1980) (citations omitted)).  Additionally, the disparity between the plea offer and the sentence Brown received is not so

great that it would necessarily trigger a constitutional violation.  See Naranjo v. Filion, No. 02Civ.5449WHPAJP, 2003 WL 1900867, at *10 (S.D.N.Y. 2003) (finding no constitutional violation where the prosecution's pre-trial plea offer was five to ten years imprisonment and the petitioner was sentenced to twenty-five to fifty years imprisonment after trial verdict). There is also no constitutional violation because Brown was convicted of an offense other than what was offered in the plea offer.  See Martinez, 26 N.Y.3d at 200 (finding no justification to overturn conviction where the defendant was convicted of a crime different from the crime identified in the plea offer).

Thus, Brown's petition on this issue is without merit.


## 6.  Trial Court Lacks Subject-Matter Jurisdiction

Brown argues that the trial court lacked subject matter jurisdiction because he was never arrested, arraigned, or held for grand jury proceedings on the count of sexual abuse in the first degree.  Pet. at 16.

Brown argued in his pro se brief to the Appellate Division that the trial court lacked subject matter jurisdiction.  SR 235-237.  The Appellate Division found that the trial court did have subject matter jurisdiction because, although the count charging sexual abuse in the first degree was not contained in the felony complaint, it was included in the subsequent indictment.  SR 306; Brown 946 N.Y.S.2d at 763.  The Appellate Division held that "the grand jury had the authority to consider offenses other than 'those designated in the felony complaint.'"  Id. (quoting People v. Simmons, 579 N.Y.S.2d 499, 500 (N.Y. App. Div. 1991), lv. denied, 79 N.Y.2d 1007 (1992)).

Brown's contention is without merit because "[i]n New York, a grand jury indictment,

not an accusatory instrument such as a complaint, forms the basis for a prosecution."
Ragland v. Graham, No. 09-cv-09639 (SAS), 2015 WL 545541, at *3 (S.D.N.Y. Feb. 15, 2015) (citing N.Y. CRIM. PROC. LAW § 1.20(1), (3), (8), (17)). Further, a grand jury may return an indictment for offenses other than those designated at the beginning of the grand jury proceeding. Id. Under New York law, any pre-indictment deficiencies in the felony complaint are moot once the grand jury returns a valid indictment. Cusamano v. Donelli, No. 06 Civ. 6047(PAC)(THK), 2010 WL 2653653, at *3 (S.D.N.Y. July 1, 2010) (citing People v. Hart, 25 A.D.3d 815, 816 (N.Y. App. Div. 2006)). In any case, Brown's jury conviction means that he was guilty as charged, beyond a reasonable doubt, and "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986).

Thus, Brown's petition on this issue is without merit.


**7. Count Charging Sexual Abuse in the First Degree is Duplicitous and Lacks Specificity**

Brown argues that the counts in the indictment charging him with rape in the first degree by forcible compulsion and sexual abuse in the first degree by forcible compulsion are duplicitous, and the indictment lacks specificity. Pet. at 17. The Appellate Division found that Brown had failed to preserve the argument that the indictment was not adequately specific, and in any case, the argument failed on the merits because the indictment adequately apprised him of the underlying facts and circumstances of the charges. SR 306; Brown 946 N.Y.S.2d at 763. The Appellate Division also found that

Brown had failed to preserve his argument that the rape and sexual abuse charges were duplicitous. Id. The Appellate Division held that, in any event, that contention was without merit and moot, because Brown was ultimately acquitted of rape in the first degree. Id.

Initially, the Court notes that Brown failed to raise this argument in federal constitutional terms before the Appellate Division, or the Court of Appeals. As such, these claims are not cognizable on habeas review. See Campbell v. Poole, 555 F. Supp. 2d 345, 378 (W.D.N.Y. 2008) (finding that the petitioner's claims alleging defects in the indictment were not cognizable on habeas review as they were not raised in federal constitutional terms). However, courts have found "that a duplicitous indictment may impair a defendant's federal 'rights to notice of the charges against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution.'" Williams v. Lempke, No. 11 Civ. 2504(PGG)(JLC), 2012 WL 2086955, at *20 (S.D.N.Y. June 1, 2012) (quoting United States v. Crisci, 273 F.3d 235, 238 (2d Cir. 2001) (additional citation omitted)). The Court also notes that the claims are procedurally barred, as the Appellate Division held that Brown failed to preserve both his contention that the indictment lacked specificity, and that the charged contained in the indictment were duplicitous. SR. 306; Brown, 946 N.Y.S.2d at 763-64.

In any case, the indictment properly apprised Brown of the charges against him. See SR 064-065. It is well-establish in the Second Circuit that an indictment satisfies constitutional minimum standards where it tracks the language of the statute the defendant allegedly violated, along with the date and time of the alleged incident. See DeVonish v. Keane, 19 F.3d 107, 109 (2d Cir. 1994) (finding a burglary indictment sufficient where it tracked the language of the statute and noted the date and time of the crime); Padilla v.

Brady, No. 13-CV-7908 (JPO), 2015 WL 394090, at *9 (S.D.N.Y. Jan. 29, 2015) (finding an indictment sufficient where it "unambiguously" stated the crimes charged and stated the approximate time and place of the crimes). Here, the indictment charged Brown under five counts, using language that tracked the statutory language of each crime charged, and noted the approximate date of the crimes. See SR 064-065.

As to Brown's claim that the rape and sex abuse charges were duplicitous, the Court notes that there is no federal constitutional right against duplicity. Jones v. Lee, No. 10 Civ. 7915(SAS), 2013 WL 3514436, at *10 (S.D.N.Y. July 12, 2013). Under New York law, "[e]ach count of an indictment may charge one offense only." N.Y. CRIM. PROC. LAW § 200.30(1). Here, the indictment against Brown contained five counts, each charging Brown with one offense. Thus, the indictment is not duplicitous. See Beverly v. Walker, 899 F. Supp. 900, 909 (N.D.N.Y. 1995) (rejecting claim that the indictment was duplicitous where each separate count contained one offense). Also, as noted by the Appellate Division, this argument is moot, as Brown was ultimately acquitted of rape in the first degree. People v. Haberer, 24 A.D.3d 1283, 1283 (N.Y. App. Div. 2005), lv. denied, 4 N.Y.3d 767.

Thus, Brown's petition on these grounds is without merit.


### III. Conclusion

For the reasons stated above, it is hereby:

1.  **RECOMMENDED** that Robert Brown's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**; AND

2.  Furthermore **RECOMMENDED** that no certificate of appealability should be

issued with respect to any of Brown's claims as Brown has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).  <u>See</u> 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); <u>see</u> <u>also</u> <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  May 31, 2016
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge